# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| EDWARD MCFADDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18-00395-CV-W-BP |
| | ) |
| VAN CHEVROLET-CADILLAC, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

Plaintiff Edward McFadden ("Plaintiff") filed this suit for age discrimination against his former employer, Defendant Van Chevrolet-Cadillac, LLC ("Defendant"). Now pending is Defendant's Motion to Stay Proceedings and Compel Arbitration, (Doc. 9), which argues that the parties contractually agreed to arbitrate this dispute. As further explained below, the Court finds that mutual assent is lacking because Defendant did not sign the agreement or otherwise establish its assent. Consequently, the Motion is **DENIED**.

## I. BACKGROUND

Defendant owns and operates a car dealership in Kansas City, Missouri. On November 28, 2016, Defendant hired Plaintiff on an at-will basis as sales director. At that time, Defendant presented Plaintiff with a document titled Mutual Agreement to Arbitrate Claims ("Agreement"). In relevant part, the Agreement provides that "[b]y agreeing to arbitrate, the Dealership and its Employees give up their right to sue in court, as well as the right to trial by jury. The Dealership and Employees agree, instead, that any legal claim that either may have against the other will be

submitted to a private, impartial arbitrator . . . for a final and binding decision[.]" (Doc. 10-1, p. 5, § 1.) (emphasis omitted.)[1]

The Agreement specifies that the parties agree to "resolve by arbitration all statutory, contractual and common law claims or controversies, past, present or future, that arise out of or relate to the Employee's hiring, employment, or termination . . . including . . . claims of discrimination . . . under any federal, state or local statute or ordinance[.]" (*Id.*, p. 5, § 2.) The Agreement states that it "shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16" (the "FAA") (*Id.*, p. 10, § 22.)

The Agreement concludes with a page titled "KNOWING AND VOLUNTARY AGREEMENT." (*Id.*, p. 12.) This page states, in part, "I understand that by signing this agreement I am giving up my right to a jury trial." (*Id.*) A designated signature and date line is provided for both the "Employee" and for Defendant's "Authorized Dealership Representative." Plaintiff signed and dated the Agreement "11-28-16." (*Id.*) The signature and date lines for Defendant are blank. Defendant states that it "could not locate a copy of the Agreement signed by [Defendant]." (Doc. 10, p. 6, n.1.)

On April 1, 2017, Defendant terminated Plaintiff's employment and replaced him with a younger individual. Plaintiff responded by filing a one-count Petition in state court. The Petition alleges that Defendant discriminated against Plaintiff on the basis of age in violation of the Missouri Human Rights Act. *See* Mo. Rev. Stat. §§ 213.010(1), 213.055.1(1)(a). Defendant removed the case to this Court on the basis of diversity jurisdiction, (Doc. 1), and now moves to compel arbitration pursuant to the Agreement, (Doc. 9).

---

[1] All page numbers are those generated by the Court's CM/ECF system.

## II. DISCUSSION

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When presented with a motion to compel arbitration, "we ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (citations and quotations omitted). Arbitration must be ordered if both inquiries are answered in the affirmative. *Id.*

Validity turns on the application of state contract law.[2] *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015). "The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. Ct. App. 2010) (citations and quotations omitted). The party moving to compel arbitration bears the burden of proving these elements. *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo. Ct. App. 2013).

Here, Plaintiff contends the Agreement is not valid for several reasons, including that the parties did not mutually assent. Defendant argues the Agreement is valid, and further argues that the Agreement's delegation clause requires that contract formation and enforceability issues be submitted to the arbitrator. The Court addresses these arguments below.

### A. Mutual Assent

"Offer and acceptance requires a mutual agreement." *Baier v. Darden Rests.*, 420 S.W.3d 733, 738 (Mo. Ct. App. 2014). "A mutual agreement is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time." *Youngs v. Conley*, 505 S.W.3d 305, 314 (Mo. Ct. App. 2016) (citations, quotations, and alterations omitted).

---

[2] Both parties rely on Missouri contract law, and the Court finds that it applies to the Motion.

"A meeting of the minds occurs when there is a definite offer and an *unequivocal acceptance*." *Id.* (citations and quotations omitted) (emphasis in original). Under Missouri law, a "party's signature on a contract remains the common, though not exclusive, method of demonstrating agreement." *Baier*, 420 S.W.3d at 738 (citations and quotations omitted). "Assent can be shown in other ways, such as by the parties' conduct." *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 134 (Mo. Ct. App. 2005).

Whether mutual assent exists "depends upon the intentions of the parties." *Baier*, 420 S.W.3d at 738. "Seldom are the intentions of parties capable of direct proof and, ordinarily, such intentions are determinable only through logical deduction from proven facts." *Id.* (citations and quotations omitted). The Court must find whether the facts establish a party's intent to be bound. *Id.* at 738-39; *see also Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004) (stating that "whether the parties have a valid arbitration agreement that binds them is a question for judicial determination").

As discussed above, the Agreement contains a designated signature and date line for both the "Employee" and for Defendant's "Authorized Dealership Representative." Plaintiff signed and dated the Agreement. The signature and date lines for Defendant are blank. Plaintiff alleges that there was no mutual assent because Defendant did not sign the Agreement or otherwise establish its assent, and the Court agrees.

Upon review of Missouri case law, the Court finds that *Baier v. Darden Restaurants*, 420 S.W.3d 733 (Mo. Ct. App. 2014), is most applicable to this case. In *Baier*, the employee signed an acknowledgement that she received a booklet describing her employer's dispute resolution process. *Id.* at 735. The acknowledgement stated: "I agree as a condition of my employment, to

submit any eligible disputes I may have to the company's [Dispute Resolution Process] . . . this includes . . . claims under state and federal laws relating to harassment or discrimination[.]" *Id.* The booklet mandated arbitration as the final step of this process for employment disputes. *Id.* The acknowledgement also included a signature line for "Management Signature," but no one signed the document on behalf of the employer. *Id.* The employee subsequently sued her employer in state court for sexual harassment, gender discrimination, and retaliation. *Id.* at 735-36. The trial court denied the employer's motion to compel arbitration, and the employer appealed.

On appeal, the Missouri Court of Appeals recognized that the acknowledgment was a proposal to enter into a bilateral contract. *Id.* at 738. That is, each party would promise to arbitrate employment-related disputes "in exchange for the other party's promise to do the same." *Id.*[3] The court then found that mutual assent does not exist simply because "an offeree signs an *unsigned* proposal." *Id.* at 739 (emphasis in original). "Rather, the absence of the offeror's signature on the proposal presents a question of fact, requiring the trial court to determine the offeror's intent, *i.e.*, whether an 'offer' to enter into a bilateral contract was made, and thus whether the offeror intends to be bound if the unsigned proposal is accepted by the offeree." *Id.* *Baier* then held that the employer failed to present evidence of such intent. Instead, the employer merely offered a "self-serving claim that [it] meant for the [acknowledgement] to be an offer that would mutually bind both [employee] and [employer] if accepted in writing by [employee]." *Id.* *Baier* found that the "trial court was free to disregard this self-serving claim." *Id.*

*Baier* also found that the lack of a signature when called for constituted "contrary evidence of [employer's] intent" to be bound because the court was "hard pressed to discern any purpose for placing a signature line for [employer] on the [acknowledgement] unless it was to require an

---

[3] In contrast, a unilateral contract involves "a mutual understanding that one party perform and the other party compensate for such performance." *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003).

5

authorized signature as a condition of mutual assent." *Id.* The employer also failed to provide any explanation for its failure to sign. *Id.* Consequently, *Baier* found a lack of mutual assent and affirmed the trial court. *Id.*; *see also Cody v. Chase Prof'ls*, 2018 WL 2219090, at * 3 (W.D. Mo. May 15, 2018) (finding *Baier* "instructive" and denying motion to compel arbitration under similar facts).[4]

Similarly, this Court finds that Defendant failed to present facts that show mutual assent. The Agreement contains a conspicuous and unambiguous signature line for Defendant's "Authorized Dealership Representative." This Court is "hard pressed to discern any purpose" for the signature line "unless it was to require an authorized signature as a condition of mutual assent." *Baier*, 420 S.W.3d at 739. Indeed, directly above the signature line states: "*by signing this agreement I am giving up my right to a jury trial*." (Doc. 10-1, p. 12.) (emphasis supplied.) Defendant's signature line, however, is blank. This blank signature line is "contrary evidence" of Defendant's purported intent to be bound. *Baier*, 420 S.W.3d at 739.

The Court further finds that Defendant failed to present other evidence that would establish its assent even absent a signature. Defendant relies on an Affidavit from its Director of Human Resources, David McCullough. (Doc. 10-1, pp. 2-3.) In relevant part, Mr. McCullough states that "[b]y hiring a candidate for employment, [Defendant] accepts the terms of and agrees to be bound by the Agreement." (*Id.*, ¶ 8.) According to Mr. McCullough, Defendant discussed and presented the Agreement to Plaintiff before hiring him, Plaintiff signed the Agreement as a condition of employment, and Defendant filed the Agreement in Plaintiff's personnel file. (*Id.*, ¶¶ 7, 10-12.)

The Court finds these statements to be self-serving and not sufficient to show mutual assent. *Baier*, 420 S.W.3d at 739 (rejecting employer's "self-serving" statement that the

---

[4] Appeal docketed, No. 18-2173, but dismissed pursuant to a joint stipulation of the parties (8th Cir. July 11, 2018).

acknowledgment was an offer that would be mutually binding if accepted in writing by the employee); *Cody*, 2018 WL 2219090, at * 3 (rejecting similar statements as "not conclusive, and if anything . . . self-serving"). Importantly, Mr. McCullough does not explain why Defendant failed to execute the Agreement. He does not state that Defendant actually signed the Agreement, but that the signed copy is missing or misplaced. Nor does the record establish that Defendant orally accepted the terms once Plaintiff signed. *Heritage Roofing*, 164 S.W.3d at 134-35 (finding oral consent when one party responded to written proposal for roofing work: "I approve it, I want you to go ahead and do the work"). Finally, simply filing the unexecuted document in Plaintiff's personnel file does not establish Defendant's intent to be bound.

The Court also rejects Defendant's suggestion that it established assent by filing the Motion to Compel Arbitration. (Doc. 10, p. 6, n.3.) "There is simply no authority for the proposition that mutual assent (i.e., offer and acceptance) to the terms of a bilateral contract can be supplied long after a contract was supposedly formed by a later suit to enforce the contract." *Baier*, 420 S.W.3d at 740-41. Under all these circumstances, the Court finds that Defendant failed to present facts sufficient to establish mutual assent.

Finally, the case law cited by Defendant is not persuasive. Defendant cites *Houston v. NPC International, Inc.*, 2014 WL 12779236 (W.D. Mo. Mar. 24, 2014), a case in which Judge Fenner held an arbitration agreement was enforceable despite the lack of the employer's signature. However, *Houston* is distinguishable because the contract in that case did not have a blank for the employer to sign the agreement. *Houston*, Case No. 13-CV-01160, Doc. 13-2, p. 2-3. Thus, the negative inference created by the lack of a signature was not present. The other cases Defendant relies upon are factually distinguishable, were decided prior to *Baier*, and/or did not find mutual assent. *See, e.g.*, *In re H&R Block*, 2014 WL 3401010, at * 2 (W.D. Mo. July 11, 2014) (finding,

7

in suit for alleged negligent handling of tax returns, and without mentioning *Baier*, that "assent was shown by H&R Block preparing and transmitting plaintiff's tax returns in exchange for plaintiff's agreement to [arbitrate] and payment of fees to H&R Block."); *Heritage Roofing*, 164 S.W.3d at 135.

### B. The Delegation Clause

Defendant next contends that the parties delegated disputes regarding contract formation and enforceability to the arbitrator. (Doc. 14, p. 9-10.) The Agreement provides that "[t]he arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." (Doc. 10-1, p. 10, § 21.)

Before reaching the delegation clause, however, this Court must first find that the parties entered into a valid contract. *See Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 (Mo. banc 2017) ("[A] court must be satisfied that the parties have 'concluded' or formed an arbitration agreement before the court may order arbitration to proceed according to the terms of the agreement."). Because the Court concludes that the Agreement lacks mutual assent, the delegation clause has no import. *Id.*; *Bellemere v. Cable-Dahmer Chevrolet Inc.*, 423 S.W.3d 267, 273 (Mo. Ct. App. 2013) (recognizing that "enforceability under the FAA never comes into play if a contract itself was never formed"). Therefore, Defendant's reliance on the delegation clause is rejected.

### III. CONCLUSION

Accordingly, Defendant's Motion to Stay Proceedings and Compel Arbitration, (Doc. 9),

is **DENIED**.  Defendant's request for oral argument is also denied as unnecessary.

**IT IS SO ORDERED.**

DATE:  August 3, 2018

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT